IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MCWHINNEY REAL ESTATE SERVICES, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> GRAYSTREET PARTNERS, GRAYSTREET 1600 BROADWAY, LLC, GRAYSTREET 1706 BROADWAY, LP, GRAYSTREET BROADWAY, LP, GRAYSTREET ACQUISITIONS, LLC, GRAYSTREET/KEM EXCHANGE, LLC, and KEM TEXAS, LTD, <br><br> *Defendant.* | Civil Action No. 5:21-cv-00490 |

## PLAINTIFF'S ORIGINAL COMPLAINT AND REQUEST FOR INJUNCTION

COMES NOW, MCWHINNEY REAL ESTATE SERVICES, INC. ("McWhinney" or "Plaintiff"), and, pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, files this Original Complaint complaining of Defendants GRAYSTREET PARTNERS ("Gray Street"), GRAYSTREET 1600 BROADWAY, LLC, GRAYSTREET 1706 BROADWAY, LP, GRAYSTREET BROADWAY, LP, GRAYSTREET ACQUISITIONS, LLC, GRAYSTREET/KEM EXCHANGE, LLC, and KEM TEXAS, LTD (collectively all Defendants other than Gray Street are referred to herein as the "Gray Street Affiliates")[1] and would show the Court as follows:

---

[1] The Gray Street Affiliates are added as necessary parties for injunctive relief.

PLAINTIFF'S ORIGINAL COMPLAINT AND REQUEST FOR INJUNCTION                                              1

## I.
## NATURE OF THE ACTION

1. By its Complaint, McWhinney seeks injunctive and declaratory relief, as well as specific performance, against Defendants Gray Street and the Gray Street Affiliates. The suit arises from Gray Street's refusal to honor McWhinney's exercise of a valid right of first refusal, which entitles McWhinney to purchase a specific piece of real property under the same or similar terms as those agreed to by any other potential buyer. Despite acknowledging McWhinney's rights throughout April and May 2021, Gray Street erroneously contends that McWhinney right of first refusal expired on April 16, 2021. Gray Street and the Gray Street Affiliates will close on a sale of the Property with another purchaser imminently, unless this Court takes action.

## II.
## PARTIES

2. Plaintiff, McWhinney Real Estate Services, Inc. ("McWhinney") is a Colorado corporation with its principal place of business at 1800 Wazee Street, Suite 200, Denver, CO 80202.

3. Defendant GrayStreet Partners is a Texas General Partnership, which may be served with process by serving its managing partner, Kevin Covey at 4515 San Pedro Ave., San Antonio, TX 78212 or wherever he may be found.

4. Defendant GrayStreet 1600 Broadway, LLC is a Texas Limited Liability Company which may be served with process by serving its registered agent, Paul Covey at 4515 San Pedro Ave., San Antonio, TX 78212 or wherever he may be found.

5. Defendant GrayStreet 1706 Broadway, LP, is a Texas Limited Partnership which may be served with process by serving registered agent, Kevin Covey at 4515 San Pedro Ave., San Antonio, TX 78212 or wherever he may be found.

6. Defendant GrayStreet Broadway, LP, is a Texas Limited Partnership which may be served with process by serving registered agent, Kevin Covey at 4515 San Pedro Ave., San Antonio, TX 78212 or wherever he may be found.

7. Defendant GrayStreet Acquisitions, LLC is a Texas Limited Liability Company which may be served with process by serving its registered agent, Kevin Covey at 4515 San Pedro Ave., San Antonio, TX 78212 or wherever he may be found.

8. Defendant GrayStreet/KEM Exchange, LLC is a Texas Limited Liability Company which may be served with process by serving its registered agent, Paul Covey at 4515 San Pedro Ave., San Antonio, TX 78212 or wherever he may be found.

9. Defendant KEM Texas, Ltd., is a Texas Limited Partnership which may be served with process by serving registered agent, Paul Covey at 4515 San Pedro Ave., San Antonio, TX 78212 or wherever he may be found.

### III.
### JURISDICTION AND VENUE

10. This Court has jurisdiction over this matter on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332. Diversity of citizenship exists because Plaintiff is a citizen of the state of Colorado, while each Defendant is a citizen of the state of Texas. This suit seeks declaratory judgment and specific performance related to a contract for a purchase of property

worth tens of millions of dollars, and therefore satisfies that the amount in controversy exceed $75,000.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within in this district and the property that is the subject of the action is situated within this district.

12. McWhinney is a real estate investment company that develops retail, multifamily home, and mixed-use properties. In the industry, McWhinney has gained a reputation as an innovative and comprehensive real estate development, investment and management firm. McWhinney prides itself on creating unprecedent value and opportunity for its customers, associates, investors and partners.

13. In late 2020, McWhinney began negotiating with Gray Street to purchase a specific piece of real property known as Broadway East – the Pearl District (the "Property"). On January 15, 2021, Gray Street, through its Managing Partner Kevin Covey, and McWhinney entered into an Expression of Interest Agreement (the "Letter Agreement"). A true and correct redacted copy of the Letter Agreement is attached hereto as Exhibit A. The Letter Agreement contemplated that McWhinney and Gray Street would form a new special purpose entity "for the purposes of recapitalizing current ownership of the Property." Ex. A, p. 1. Gray Street would then "contribute and convey the Property" to the newly created entity, which was to be 80% owned by McWhinney. *Id.* In exchange for this contribution of the Property, the Letter Agreement contemplated that McWhinney would acquire the Property at a price well into eight figures. *Id.*

14. The Letter Agreement contemplated that the Parties would work together in good faith to "negotiate and enter into [a] Contribution Agreement, [a] JV Agreement and all necessary

documents to permit the Parties to effect the transactions contemplated" by the Letter Agreement. Ex. A, p. 2

15. The Letter Agreement also granted McWhinney an absolute "right of first refusal to purchase the Property upon the same or similar terms and conditions" agreed to by any potential purchaser. Ex. A, p. 3. McWhinney's right of first refusal exists during the "Exclusivity Period" which was defined by the Letter Agreement as the period up "until the full execution and delivery of the Contribution Agreement and the JV Agreement or, *if the Parties are no longer engaged in good faith negotiations*, ninety (90) days from the date of [the Letter Agreement], whichever occurs first." *Id.*, p. 2 (emphasis added).

16. The Parties expressly agreed that McWhinney's right of first refusal and the Exclusivity Period were "binding provisions" of the Letter Agreement. *Id.*, p. 3.

17. After executing the Letter Agreement, McWhinney immediately began negotiating the terms of the contemplated Contribution and JV Agreements. McWhinney prepared drafts of these agreements and worked with Gray Street to advance the drafts. On February 17, 2021, McWhinney sent Gray Street's counsel a partially executed copy of an early entry agreement to allow McWhinney access to the Property, in order to efficiently effectuate the sale. On February 22, 2021, Gray Street's counsel responded that "GrayStreet will be signing shortly" and provided a dropbox link to various documents, so that McWhinney could begin its due diligence on the Property. On that same date, Gray Street's counsel sent McWhinney a draft purchase and sale agreement for the Property to which McWhinney's counsel provided timely comments. The purchase and sale agreement was intended to replace the contribution agreement as the parties worked through the final structure of the deal.

18. While the Parties continued to negotiate the terms of a final agreement, McWhinney performed due diligence on the Property. Talks surrounding final documents continued throughout the spring, with the Parties still actively negotiating terms of the contemplated final agreements. On March 17, 2021, McWhinney increased its offer for the purchase of the Property by an additional seven percent (7%).

19. During April, McWhinney engaged in multiple conversations with Gray Street, in which Gray Street provided market data for comparable properties in the area to allow McWhinney to prepare its pro formas for the proposed purchase of the Property. During this time, McWhinney knew that Gray Street was marketing the Property, as it was allowed to do under the Letter Agreement, but that, upon Gray Street's acceptance of an offer, McWhinney would have an opportunity to exercise its right of first refusal. At all times, McWhinney was negotiating in good faith and believed Gray Street to be doing the same. Negotiations continued through the months of April and May.

20. Unbeknownst to McWhinney, on or around April 19, 2021, Gray Street, through the Gray Street Affiliates, entered into six separate purchase and sale agreements with Fulcrum Development, LLC ("Fulcrum") to purchase the Property (the "Fulcrum PSAs"). Despite the fact the Letter Agreement granted McWhinney "a right of first refusal to purchase the Property upon the same or similar terms and conditions as set forth in any good faith, bona fide purchase and sale agreement" (Ex. A, p. 3), Gray Street did not disclose the Fulcrum PSAs. In April and May 2021, Kevin Covey engaged in regular conversations with McWhinney employees, yet never disclosed the existence of the Fulcrum PSAs. In fact, the Fulcrum PSAs were not disclosed to McWhinney

until May 18, 2021 – a month after they were executed, and only two days before the end of the Inspection Period contemplated by the Fulcrum PSAs.

21. Although he had knowledge of the executed Fulcrum PSAs, Covey continued to discuss transacting with McWhinney, who believed they were working towards a purchase of the Property, as contemplated by the Letter Agreement. On May 5, on a phone call with McWhinney Vice President, George "Trae" Rigby, while discussing the ongoing transaction with McWhinney, Covey stated that Gray Street had received higher offers for the Property and contemplated entering into an agreement with a party other than McWhinney, although at that time he did not identify Fulcrum as that other party and did not disclose that the Fulcrum PSAs had already been executed.

22. On that phone call, Mr. Rigby reminded Gray Street of McWhinney's right of first refusal under the Letter Agreement. The next day, on May 6, Covey confirmed on a phone call to Mr. Rigby that Gray Street would honor McWhinney's binding right of first refusal. Following the phone call, Mr. Rigby sent an email to Covey thanking him for the clarifications and asking him to send over the terms of the offer discussed on May 5. A true and correct copy of Mr. Rigby's email is attached hereto as Exhibit B.

23. During a phone conversation between Messrs. Rigby and Covey on May 10, 2021, Covey confirmed to Rigby that offers had come in and that the highest offer was more than McWhinney's current offer. On this May 10 phone call, Covey identified Fulcrum as the party who made the "offer," but did not disclose that Gray Street had already entered into the Fulcrum PSAs. During that call, Mr. Rigby told Covey that McWhinney had already prepared a pro forma

for the anticipated purchase and was ready and able to respond to any final competing offer, once disclosed to McWhinney.

24. Covey apologized for the delay in sending McWhinney the offer, blaming a late title report as the reason for being tardy. Covey promised to send McWhinney the terms of any final competing offer, in order to allow McWhinney to exercise its right of first refusal if it so desired. On May 12, when Rigby asked for the status of the offer package, Covey responded that he was "busy," but would send the offer by the end of the day. He did not send anything.

25. After not receiving any information, Mr. Rigby again called Covey on the evening of Friday, May 14, 2021. On that phone call, Covey, for the first time, disclosed to Rigby and McWhinney that Gray Street had entered into a contract to sell the Property to Fulcrum. Upon this hearing this disclosure, Rigby again reiterated McWhinney's right of first refusal and asked that Gray Street provide the contract. Rigby followed up that night with an email to Covey, in which Rigby reinforced that McWhinney "intend[ed] to exercise the contractually binding and valid Right of First Refusal" and requested the details of the Fulcrum offer. A true and correct copy this email is attached hereto as Exhibit C.

26. After close of business on May 18, 2021, McWhinney received a letter from Charles Murray, an attorney representing Kevin Covey and Gray Street (the "May 18 Letter"). A true and correct copy of the May 18 Letter is attached hereto as Exhibit D. Despite the fact that Covey had confirmed, as late as May 6, 2021, that Gray Street intended to honor McWhinney's right of first refusal, the May 18 Letter alleged, for the first time that "the ROFR [right of first refusal] contained within the January 15, 2021 Expression of Interest expired by its terms no later than April 16, 2021." The May 18 Letter went on to state that "[t]he ROFR applied to any 'good

faith, bona fide purchase and sale agreement or similar agreement[;]' No such agreement existed until April 19, 2021, which is after the ROFR expired." Ex. J. Also on May 18, another lawyer from Mr. Murray's firm sent copies of the Fulcrum PSAs to McWhinney.

27.  Under the Fulcrum PSAs, the transaction must close no later than the thirtieth day following the expiration of the Inspection Period. Under the terms of the Fulcrum PSAs, the Inspection Period expired at 5:00 p.m. CT on May 20, 2021.

28.  After receiving the Fulcrum PSAs on May 18, 2021, McWhinney reviewed such documents carefully, including the price and terms agreed to by Fulcrum. As such, McWhinney exercises its right of first refusal to "purchase the Property upon the same or similar terms and conditions" as Fulcrum, and has communicated this to Gray Street.

## V.
## CAUSES OF ACTION

### DECLARATORY JUDGMENT ACTION

29.  Plaintiff realleges and incorporates all preceding paragraphs herein by reference.

30.  Federal Statute provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. 28 U.S.C.A. § 2201. Texas law grants a court the same power. TEX. CIV. PRAC. & REM. CODE. § 37.003.[2]

---

[2] The Texas Declaratory Judgment Act provides that "A court of record within its jurisdiction has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."

31. "When considering a declaratory judgment action, a district court must engage in a three-step inquiry[;] [t]he court must ask (1) "whether an 'actual controversy' exists between the parties" in the case; (2) whether it has authority to grant declaratory relief; and (3) whether "to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 294 (5th Cir. 2019).

32. To show an actual controversy, the dispute at issue "must be definite and concrete, real and substantial, and admit of specific relief through a decree of a conclusive character." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009). Although "[d]eclaratory judgments cannot be used to seek an opinion advising what the law would be on a hypothetical set of facts ..., declaratory judgment plaintiffs need not actually expose themselves to liability before bringing suit." *Id.*

33. Clearly there is an actual controversy surrounding McWhinney's right of first refusal as agreed to in the Letter Agreement. On numerous occasions, McWhinney reaffirmed and sought to exercise its right of first refusal. See Ex. H. Kevin Covey, Gray Street's Managing Partner, acknowledged McWhinney's right of first refusal as late as May 6, 2021. Yet, in the May 18 Letter, Gray Street contends that McWhinney's right of first refusal expired on April 16, 2021.

34. This is simply not the case, the Letter Agreement makes clear that McWhinney's right of first refusal would expire on the earlier the execution a contribution and JV agreement, or ninety days after the Letter Agreement was executed, "if the Parties are no longer engaged in good faith negotiations." Ex. A, p. 2. At all times, McWhinney continued to negotiate with Gray Street with the belief that they were moving towards a signed purchase and sale agreement between McWhinney and Gray Street.

35. Indeed, throughout April and May 2021, even after entering into the Fulcrum PSAs, Gray Street continued to acknowledge McWhinney's right of first refusal and proceeded as though McWhinney would be given the opportunity to purchase the Property at similar terms agreed to with any other potential purchaser. McWhinney for its part continued negotiations and its diligence process in good faith.

## BREACH OF CONTRACT/SPECIFIC PERFORMANCE

36. Plaintiff realleges and incorporates all preceding paragraphs herein by reference.

37. The exclusivity provisions of the Letter Agreement is a binding contract between McWhinney and Gray Street.

38. By the above-described actions, Gray Street breached the Letter Agreement. Specifically, and without limitation, after receiving a "bona fide purchase and sale agreement" for the Property, Gray Street failed to inform McWhinney of the existence of such agreement, in an attempt to wrongfully bypass McWhinney's right of first refusal. Gray Street has also breached the Letter Agreement by moving forward with a sale of the Property to Fulcrum, despite the fact that McWhinney exercised its right of first refusal.

39. "Under Texas law, specific performance is an equitable remedy that is normally available only when the complaining party cannot be fully compensated through the legal remedy of damages or when damages may not be accurately ascertained." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 153 (5th Cir. 2004). A party seeking specific performance must plead and prove: (1) compliance with the contract, including tender of performance unless excused by the defendant's breach or repudiation; and (2) the readiness, willingness, and ability to perform at relevant times. *Di Giuseppe v. Lawler*, 269 S.W.3d 588, 593–94, 601 (Tex. 2008).

40. Under Texas Law, "[s]pecific performance is more readily available to enforce a contract involving real property than a contract involving personal property because land is regarded as unique and an action for damages is generally considered inadequate." *In re Baerg Real Prop. Tr.,* 585 B.R. 373, 390 (Bankr. N.D. Tex. 2018) (citing *Kress v. Soules*, 152 Tex. 595, 597, 261 S.W.2d 703, 704 (1953)*; Simpson v. Green*, 231 S.W. 375, 380 (Tex. Comm'n App. 1921, judgm't adopted); *Scott v. Sebree*, 986 S.W.2d 364, 369–70 (Tex. App.—Austin 1999); *Milliken v. Townsend*, 16 S.W.2d 259, 260 (Tex. Comm'n App. 1929, judgm't affirmed)).

41. Here there is no doubt that McWhinney has complied with its obligations under the Letter Agreement. Moreover, McWhinney is ready, willing, and able to step into the shoes of Fulcrum and purchase the property under same or similar conditions consistent with all rights Fulcrum would otherwise have, which is its contractual right under the Letter Agreement.

## REQUEST FOR INJUNCTION

42. Plaintiff incorporates all preceding paragraphs for all purposes

43. Plaintiff requests that this Court enter an order enjoining Gray Street and/or the Gray Street Affiliates from closing any sale of the Property, as Plaintiff has exercised its valid right of first refusal, as contained in the Letter Agreement.

44. To be entitled to injunctive relief, Plaintiff must establish "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).

45. Injunctive relief under Rule 65 of the Federal Rules of Civil Procedure is proper here because there is a threat of irreparable injury and McWhinney is likely to succeed on the merits where Gray Street has refused to comply with its unequivocal obligations under the Letter Agreement. In particular, McWhinney is likely to succeed on its claim for declaratory judgment that its right of first refusal did not expire. Moreover, McWhinney is likely to succeed on its claim that Gray Street breached the Letter Agreement, by failing to comply with the terms entitling McWhinney to a right of first refusal.

46. The threat of harm here is real, substantial, and incapable of being reversed at trial. In particular, without an injunction from this Court, Gray Street will close on the Fulcrum PSAs therefore divesting McWhinney of its right of first refusal to "purchase the Property upon the same or similar terms and conditions" as Fulcrum. *See* Ex. A, p. 3.

47. The irreparable harm is highlighted by the fact that the Letter Agreement relates to a specific piece of real property, which McWhinney would be deprived of if the sale to Fulcrum is allowed to close. Indeed, the Fifth Circuit Court of Appeals has found that "The deprivation of an interest in real property constitutes irreparable harm." *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 297 (5th Cir. 2012); see also *Home Sav. of Am., F.A. v. Van Cleave Dev. Co., Inc.,* 737 S.W.2d 58, 59 (Tex. App.—San Antonio 1987, no writ) ("The law recognizes that each and every piece of real estate is unique, and that this is certainly an element to be considered in deciding whether there has been irreparable damages.").

48. Conversely, Gray Street will suffer no harm if the injunction is granted. This is because, by exercising its right of first refusal, McWhinney agrees to "purchase the Property upon the same or similar terms and conditions" as agreed to by Fulcrum, including the rights,

representations, and warranties granted to Fulcrum, including an opportunity to inspect the Property and review related documents. Ex. A, p. 3. In other words, even if an injunction is granted, Gray Street will receive a substantially identical agreement to the Fulcrum PSAs, except that McWhinney is the buyer, instead of Fulcrum.

49.   Likewise, granting an injunction will not disserve the public as this dispute relates to a contractual dispute between private parties, which has no effect on public rights. *See Miracle Appearance Reconditioning Specialists Int'l, Inc. v. Harris*, No. 4:07-CV-524-A, 2007 WL 3005638, at *2 (N.D. Tex. Oct. 11, 2007) ("Entry of a preliminary injunction . . . does not disserve the public interest; rather, a preliminary injunction would serve the public interest to the degree the law favors the ability of private parties to enter into enforceable contracts without fear and uncertainty that they will subsequently be rewritten by the court.").

50.   Plaintiff hereby requests, and is entitled to, temporary and permanent injunctive relief, and as necessary a temporary restraining order.

## ATTORNEYS' FEES

51.   Plaintiff realleges and incorporates all preceding paragraphs herein by reference.

52.   Plaintiff has retained the undersigned counsel and is entitled to recover its reasonable and necessary attorneys' fees and costs incurred in pursuit of its claims under TEX. CIV. PRAC. & REM. CODE § 38.001.

## VI.
## CONDITIONS PRECEDENT

53.   All conditions precedent to Plaintiff's claim for relief have been performed or have occurred.

## VII.
## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff, McWhinney Real Estate Services, Inc., respectfully prays that the Court enters judgment and injunction orders (including a temporary restraining order as necessary) for Plaintiff and against Defendant Gray Street and the Gray Street Affiliates, as follows:

(1)  Preliminarily and permanently enjoin Gray Street, they Gray Street Affiliates, and all persons acting by, through or in concert with Gray Street and/or the Gray Street Affiliates, from directly or indirectly:

   a. Closing any sale of the Property, including the sale of the Property contemplating by the Fulcrum PSAs;

   b. Taking any effort to sell, dispose of, gift, or otherwise transfer the Property.

(2)  Enter a declaratory judgment that McWhinney has a valid and enforceable right of first refusal under the Letter Agreement, which has not expired;

(3)  Enter a judgment against Gray Street for specific performance of the Letter Agreement;

(4)  Award Plaintiff the costs of this action, including its attorney's fees;

(5)  Award Plaintiff such other and further, both general and special, in law or in equity, to which Plaintiff may show itself justly entitled.

Respectfully submitted,

**CONDON TOBIN SLADEK THORNTON & NERENBERG PLLC**

*/s/Aaron Z. Tobin*
Aaron Z. Tobin
Texas Bar No. 24028045
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile:  (214) 691-6311
atobin@condontobin.com

**ATTORNEY FOR PLAINTIFF**

# VERIFICATION OF ~~TRAE~~ *George A.* RIGBY

STATE OF TEXAS              §
                            §
COUNTY OF TRAVIS            §

On this *19th* day of May 2021, before me, the undersigned Notary Public, personally appeared Trae Rigby, who after being duly sworn by me stated upon oath as follows:

My name is ~~Trae~~ *George A.* Rigby. I am Vice President of Strategic Acquisitions for McWhinney Real Estate Services, Inc. ("Plaintiff"). In my capacity as Vice President of Strategic Acquisitions, I was involved in the transaction described in the foregoing Original Complaint and Request for Preliminary Injunction. I am an authorized representative of Plaintiff and am authorized to make this verification on its behalf.

I have read Plaintiff's Original Complaint and Request for Preliminary Injunction and I have personal knowledge of all facts stated therein. I declare under penalty of perjury that the factual statements and allegations contained within Plaintiff's Original Complaint and Request for Preliminary Injunction are true and correct.

_____
*A. George* ~~Trae~~ **Rigby** *George Rigby*

Subscribed to and sworn to before me by ~~Trae~~ *George A.* Rigby on the *19th* day of May 2021, to certify which witness my hand and official seal.

[Notary Seal: SCOTT L. THOMAS, NOTARY PUBLIC, STATE OF TEXAS, ID# 10407286, EXPIRES 1-9-2024]

_____
Notary Public for the State of Texas

My Commission expires on *1/9/2024*